UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BONNIE ANN TREGRE LOUPE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 16-6075 |
| PENNSYLVANIA GENERAL INSURANCE COMPANY, ET AL. | SECTION "R" (5) |

## ORDER AND REASONS

Plaintiffs Bonnie Anne Tregre Loupe, Lee Ann Tregre Cortez, and Sherry Tregre Cortez, move to remand this case to state court.[1] Plaintiffs also move for costs and fees, and sanctions, based on Defendant Huntington Ingalls Inc.'s purportedly improper removal to this Court.[2] Because defendant's removal petition was untimely, plaintiffs' motion to remand is granted. Plaintiffs' other motions are denied.

### I. BACKGROUND

Marie Nell Martinez Tregre originally filed this suit in the Civil District Court for the Parish of Orleans.[3] According to the complaint, Mrs. Tregre's

---

[1] R. Doc. 3.
[2] R. Doc. 7; R. Doc. 54.
[3] R. Doc. 1 at 1.

husband, Lee Tregre, worked for Avondale Industries, Inc., a predecessor company to Defendant Huntington Ingalls Inc.,[4] from approximately 1953 through 1994.[5] While working at Avondale, Mr. Tregre was allegedly exposed to asbestos, and some of this asbestos clung to Mr. Tregre and his clothing after he left work each day.[6] As a result, Mrs. Tregre came into contact with dangerously high levels of asbestos in the course of interacting with Mr. Tregre and laundering his clothes.[7] Mrs. Tregre was diagnosed with mesothelioma in April 2015.[8]

In addition to Avondale, Mrs. Tregre sued several defendants involved in the manufacture, distribution, and sale of asbestos-containing products that Mr. Tregre allegedly encountered in the course of his work.[9] Mrs. Tregre also brought claims against insurance companies that allegedly provided coverage to defendants and their employees for asbestos-related claims.[10]

Mrs. Tregre died on September 2, 2015.[11] Mrs. Tregre's three surviving children, Bonnie Ann Tregre Loupe, Lee Ann Tregre Cortez, and Sherry

---

[4] In its briefing, Huntington Ingalls refers to itself as "Avondale." The Court will follow Avondale's lead.
[5] R. Doc. 1-1 at 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 2-3.
[10] *Id.*
[11] R. Doc. 1-3 at 2.

Tregre Cortez, have since been substituted as plaintiffs. Mrs. Tregre's children now bring claims sounding in negligence, intentional tort, fraud, and strict liability.[12]

Avondale removed to this Court on May 16, 2016.[13] In its notice of removal, Avondale asserts that this Court may exercise jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442, because Mr. Tregre was exposed to asbestos on ships Avondale built for the U.S. government, and Avondale's government contracts required the use of asbestos. Plaintiffs argue that removal was both untimely and improper on the merits, and now move to remand to state court.[14]

## II. LEGAL STANDARD

The federal officer removal statute provides, in relevant part:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

---

[12] R. Doc. 1-1 at 5, 7, 31.
[13] R. Doc. 1.
[14] R. Doc. 3.

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1). The Supreme Court has explained that the purpose of this provision is to protect the lawful activities of the federal government from undue state interference. *See Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Because the federal government "can act only through its officers and agents," it has a strong interest in ensuring that the states do not hinder those officers in the execution of their duties. *Id.* (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). If federal officers acting within the scope of their authority "can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection . . . the operations of the general government may at any time be arrested at the will of one of its members." *Id.* (quoting *Davis*, 100 U.S. at 263); *see also Watson v. Philip Morris Companies*, Inc., 551 U.S. 142, 148 (2007) ("As Senator Daniel Webster explained [in 1833], where state courts might prove hostile to federal law, and hence to those who enforced that law, the removal statute would 'give a

4

chance to the [federal] officer to defend himself where the authority of the law was recognized.'") (quoting 9 Cong. Deb. 461 (1833)).

Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently than the general removal provision. Unlike the general removal statute, which must be "strictly construed in favor of remand," *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), the federal officer removal provision must be liberally interpreted. *Watson*, 551 U.S. at 147. Also unlike the general removal provision, there is no requirement in the federal officer removal provision that the district court have original jurisdiction over the plaintiff's claim. A case against a federal officer may be removed even if a federal question arises as a defense rather than as a claim apparent from the face of the plaintiff's well-pleaded complaint. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 430-31 (1999).

As in all cases, the party asserting federal jurisdiction in a case removed under section 1442 bears the burden of establishing that jurisdiction exists. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998). The Fifth Circuit has adopted a three-part test to determine whether a government contractor may invoke section 1442(a). The contractor must show that: (1) he is a "person" within the meaning of the statute; (2) he acted

5

pursuant to a federal officer's directions, and a causal nexus exists between his actions under color of federal office and the plaintiff's claims; and (3) he has a colorable federal defense to the plaintiff's claims. *Winters*, 149 F.3d at 398, 400.

## III. DISCUSSION

Plaintiffs assert that Avondale's removal is both untimely and defective on the merits. Because the Court finds that removal was untimely, it does not reach plaintiffs' merits arguments.

### A. Timeliness

Timeliness of removal is governed by 28 U.S.C. § 1446(b). Under that statute, a defendant generally must file notice of removal within 30 days of receiving a copy of the initial pleading or summons. *Id*; *see also Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992) ("[I]f the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant."). The 30-day clock is, however, activated only by a complaint that "affirmatively reveal[s] on its face" that removal is warranted. *Id.* at 163. If, as is uncontested here, "the case stated by the initial pleading is not removable," then a defendant may file notice within 30 days of "receipt by

6

the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added); *see also Chapman*, 969 F.2d at 161. A deposition transcript may constitute "other paper" for purposes of this section. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("[A] transcript of the deposition testimony is 'other paper.'").

In order to trigger removal, "other paper" must state an even clearer case for federal jurisdiction than that required of a complaint. In *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002), the Fifth Circuit considered in detail the requirement that "other paper" contain sufficient information to permit the defendant to "ascertain[] that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "Ascertain," the court noted "means 'to make certain, exact, or precise' or 'to find out or learn with certainty.'" *Bosky*, 288 F.3d at 211 (quoting Webster's Ninth New Collegiate Dictionary 1077 (1990)). As a result, the court held that "other paper must be *unequivocally clear and certain* to start the time limit running for a notice of removal under the second paragraph of section 1446(b)" *Id.* (internal quotations omitted) (emphasis added).

7

Avondale maintains that it did not learn that Mr. Tregre may have been exposed to asbestos on ships built under contract for the U.S. government until April 15, 2016.[15] On that date, Avondale deposed Kevin Cortez, Mrs. Tregre's son-in-law and one of plaintiffs' designated fact witnesses.[16] Plaintiffs argue that Avondale knew of Mr. Tregre's work and exposure on government ships long before Mr. Cortez's deposition. Plaintiffs point to three sources of this knowledge: (1) the October 2015 deposition of Luther Dempster, Mr. Tregre's former supervisor, in which Dempster states that Mr. Tregre worked on Army Tugs, Navy Destroyer Escorts and Coast Guard cutters[17]; (2) Mr. Tregre's deposition transcript, produced to Avondale in June of 2015,[18] in which Mr. Tregre states that he worked on all of the ships that Avondale built during the 1950s[19]; and (3) Avondale's own employment and medical files for Mr. Tregre, which, according to plaintiffs, show that Mr. Tregre worked on government-contracted ships. The Court finds that the Dempster deposition transcript provided "unequivocally clear and certain" notice of a colorable federal defense, and therefore sufficed to start the thirty day removal clock. Because the deposition was taken on October 16, 2015—

---

[15] R. Doc. 1 at 3.
[16] *Id.*
[17] R. Doc. 3-5 at 6.
[18] R. Doc. 3-29.
[19] R. Doc. 12-4 at 30.

8

seven months before removal—Avondale's notice of removal is untimely and the case must be remanded to state court.[20]

In his deposition, Dempster, a forty-one year employee of Avondale's and Mr. Tregre's former supervisor, states clearly that: (1) while under Dempster's supervision, Mr. Tregre "worked in asbestos"[21] and "worked amosite [and] worked Kaylo"[22]; (2) Mr. Tregre "worked the DE [Destroyer Escort] jobs under Red [Cortez]"[23]; and (3) Mr. Tregre's job duties under Cortez were essentially the same as his job duties under Dempster.[24] These

---

[20] It is worth noting that receipt of the deposition *transcript*, not the taking of the deposition, starts the removal period. *See Nelson v. Wal–Mart Louisiana, LLC*, No. 09-0302, 2009 WL 3753539, at *2 (W.D. La. Nov. 9, 2009) ("[I]t was not the deposition testimony itself that triggered the removal time to run but the deposition transcript which can be considered 'other paper' for the purposes of Section 1446(b)"); *see also S.W.S. Erectors*, 72 F.3d at 494 ("[A] *transcript* of the deposition testimony is 'other paper.'") (emphasis added)). Here defendants do not appear to contest that they received a transcript of the deposition more than 30 days before removal, and the Court's experience suggests that a six month delay in obtaining a deposition transcript would be highly unusual.
[21] *Id.* at 17.
[22] *Id.* at 30.
[23] *Id.* at 23. Destroyer Escorts are Navy ships. S*ee also, id.* at 87 ("A: My biggest job was the cargo ships, all commercial jobs. Red Cortez took care of the Navy jobs, more or less. Q: You have been very clear about that throughout your deposition.")
[24] *Id.* at 73 ("Q: Whether Mr. Tregre was essentially working under you or working under Mr. Cortez, his job duties and responsibilities stayed essentially the same, correct? A: Yes; yes."). In response to a question about whether Mr. Tregre worked on a specific ship, the MARKHAM, Dempster stated:

plain statements lead to the inescapable conclusion that Mr. Tregre was exposed to asbestos while working for Cortez on U.S. government ships.

Rather than considering Dempster's deposition as a whole, the parties focus on two specific statements concerning Tregre's work on U.S. government ships. In the first, Dempster states that Mr. Tregre worked on U.S. Army tugs and that he would have worked with asbestos-containing "Kaylo" pipe insulation on those tugs:

> Q    All right. You mentioned Army tugs. Do you recall that Mr. Tregre worked on the Army tugs doing the type of work you just described?
>
> A    Yes.
>
> Q    And that work would have been in the superstructure or house of the tug?

---

I told you blanket, he was around insulation. For 40-something years he was there, he was exposed to insulation. We worked in the shop, he unloaded trucks, loaded -- brought material on the ship. He worked amosite, he worked Kaylo. I don't remember what jobs. He worked it at different phases, when he worked for me, he worked for Red Cortez, and on different jobs. *What he did for Red, I have no idea.* But he worked for me. I told you he worked different Kaylo. That is all I was taking care of on the ships. We didn't have nothing else.

*Id.* at 30 (emphasis added). This statement, like many of Dempster's purported equivocations, refers to Dempster's knowledge of which particular ships Mr. Tregre worked on. It does nothing to undermine Dempster's clear and unequivocal testimony that Mr. Tregre's job duties under Cortez mirrored his duties under Dempster.

> A    Yeah. They had insulation, pipe insulation, in the superstructures too.
>
> Q    Okay. So would there have been pipe insulation installed on the Army tugs at the time Mr. Tregre was working on those tugs?
>
> A    I'd say yes.
>
> Q    Do you remember – are we talking about half-round insulation?
>
> A    Regular pipe insulation.
>
> Q    Would that be the Kaylo kind of pipe insulation?
>
> A    That type material, yes.[25]

In the second, Dempster states that Mr. Tregre worked on Navy and Coast Guard ships:

> Q    What is the next type of vessel built at Avondale that you recall Mr. Tregre working on?
>
> A    He worked on everything I worked on.
>
> Q    He worked on all of the ships you worked on?
>
> A    Just about. He worked on the *DEs* [*Destroyer Escorts*], he worked on the PCEs, he worked on the DDGs, he worked on the *Coast Guard cutters*, and he worked some commercial jobs.[26]

Avondale attempts to counter the effect of these two passages by pointing to other sections of Dempster's deposition where he appears to equivocate. For instance, soon after he said that Mr. Tregre worked with Kaylo on the Army

---

[25]    *Id.* at 19-20.
[26]    R. Doc. 12-5 at 22 (emphasis added).  Destroyer Escorts and Coast Guard cutters are built under contract with the U.S. government.

11

tugs, Dempster stated that he could not "swear to" whether Kaylo was used on the Army tugs.[27] Two pages later, Dempster stated that he does not have particular recollections of seeing Tregre work on any particular ship.[28] Dempster later stated: "There's no way I can tell you exactly what ships that [Mr. Tregre] worked on or wasn't working on. I would say there is a possibility he worked on all of them."[29] Dempster also said: "I can't remember what Mr. Tregre worked on, didn't work on, and I would be a damned fool if I'd stand here and tell you, 'Yes, he worked on DeLaValle,' or 'Yes, he worked on Westinghouse.'" Finally, Dempster stated: "I'm trying to get over that I cannot swear to what ships, what time, this man was working this, or he was working that."[30] Dempster also made clear in his deposition that he only supervised Mr. Tregre on commercial ships and that Cortez would have supervised Mr. Tregre's work on government vessels.[31]

The Court remains unconvinced that Dempster's purported equivocations erase the effect of the two succinct statements raised by plaintiffs. A fair reading suggests that Dempster cannot remember *which particular* government ships Mr. Tregre worked on, rather than whether he

---

[27]     *Id.* at 21.
[28]     *Id.* at 24.
[29]     *Id.* at 67
[30]     *Id.* at 82-83.
[31]     *Id.*

12

worked on any government ships at all. But even if the Court were to accept Avondale's argument, the purported equivocations do nothing to undermine the clear effect of Dempster's testimony as a whole. As described above, Dempster states clearly and repeatedly that Mr. Tregre's work exposed him to asbestos, that Mr. Tregre worked under Cortez, and that Cortez supervised work on U.S. government ships.

Finally, Avondale suggests that the Court must disregard Dempster's deposition because "Dempster could not testify with specificity, but rather relied on his knowledge of insulators in general."[32] This statement mischaracterizes Dempster's testimony. As noted, Dempster speaks specifically regarding Mr. Tregre's work and exposure. To the extent that Avondale is suggesting that Dempster's statement is not clear and unequivocal unless it reveals first-hand, eye-witness knowledge of the facts supporting removal, Avondale has presented no authority supporting such a requirement. To the contrary, the Fifth Circuit has found "other paper" where statements are not based on personal knowledge. *See, e.g., Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir.1994) (counsel's bare representations concerning amount in controversy were "other paper"). The Court's rejection of a first-hand knowledge requirement is further supported by the

---

[32] R. Doc. 12 at 11.

nature of the federal officer removal inquiry. In order to support removal, Avondale "need not prove the asserted [federal] defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Winters*, 149 F.3d at 400; *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("The officer need not win his case before he can have it removed."). It follows that "other paper" need not be sufficient, on its own, to *prove* the purported federal defense. Because Dempster's deposition, read as a whole, provides unequivocally clear and certain notice of the facts supporting federal officer removal, the Court finds that the deposition transcript is "other paper" sufficient to begin the thirty day removal period. Avondale's removal seven months after Dempster's deposition is therefore untimely.

### B. Costs and Fees and Sanctions

In addition to moving for remand, plaintiffs also move for costs and fees, and for sanctions, against Avondale. Cost and fee awards after remand are governed by 28 U.S.C. 1447(c). Under that provision, "[f]ees should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004) (quoting Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 292 (5th Cir. 2000)); *see also Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 711, 163 L. Ed. 2d 547 (2005).

("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.") Here, a recent Fifth Circuit opinion in a similar case supports Avondale's argument that removal, if timely, would be appropriate on the merits. *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016). Although the Court finds removal to be untimely, *Savoie* gave Avondale objectively reasonable grounds to believe that removal was appropriate. The Court therefore denies plaintiffs' motion for costs and fees. Plaintiffs' motion for sanctions is denied for the same reasons. *See M, G, & B Servs., Inc. v. Buras*, No. 04-1509, 2004 WL 2029416, at *1 (E.D. La. Sept. 9, 2004) (denying motion for sanctions where defendants' argument supporting removal "was meritless, [but] not frivolous").

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is GRANTED. Plaintiffs' motions for costs and fees and for sanctions are DENIED.

New Orleans, Louisiana, this __17th__ day of November, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE